## MEASURE OF DAMAGES FOR FAILURE TO FURNISH MATERIALS TO A SUB-CONTRACTOR.

Circuit Court of Cuyahoga County.

WILLIAM R. BENSON, TRUSTEE, v. THE VAN DORN IRON WORKS CO.

Decided, December 14, 1908.

The measure of damages for breach of a contract to furnish materials to a sub-contractor on a building job is not the profit that might have been made if the materials had been furnished, but the difference between the agreed price of the ·materials and what they would have cost in the market.

*Carr, Stearns & Chamberlain,* for plaintiff in error.
*Blandin, Rice & Ginn,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here stand in the same relation to each other as they stood in the court below. The plaintiff is the duly elected and qualified trustee in bankruptcy of the estate of the co-partnership of Welsh & Soest. The defendant is a corporation organized under the laws of Ohio. The plaintiff's petition sets out two claims, on which he says he is entitled to recover against the defendant. The first is based upon this state of facts, as set out in the petition: that one Charles Gilpin had a contract for the erection of a building in the city of Baltimore, Maryland; that in the construction of said building certain ornamental and light ironwork was required; that Welsh & Soest entered into a contract with Gilpin to furnish said ironwork; that such contract between Gilpin and Welsh & Soest was made on.the 31st of October, 1905; that on the 23d day of January, 1906, Welsh & Soest entered into a contract with the defendant by which the defendant undertook and agreed to furnish said ironwork for said building for $20,000 less $450 which it was agreed might be, and finally agreed should be omitted or deducted, because of a change made in the material to be furnished, making the amount

which Welsh & Soest were to pay to the defendant $19,550. A part of the contract between Welsh & Soest and the defendant was that Gilpin should became surety for Welsh & Soest to the defendant for the payment of the amount which was to go to it. Gilpin did in writing guarantee this contract to the defendant. The contract between Welsh & Soest and the defendant provided that the defendant should perform the work to the acceptance of the architect and should complete it in the shortest possible time consistent with good workmanship and material. On or about the 26th day of February, 1906, said Gilpin became financially embarrassed and was afterwards adjudged bankrupt, and on the date last named Welsh & Soest notified the defendant of the financial embarrassment of Gilpin and requested the defendant to stop work on the contract until further instructions, and on the 28th of February, 1906, the defendant did stop, in accordance with said request, and agreed to suspend operations in the performance of said contract until further instructions were received, as requested by said Welsh & Soest. Thereafter, Gilpin being entirely unable to proceed with his contract for the construction of said building, such construction was awarded by the owners of same to the Charles McCaul Company, of Philadelphia, and on the 28th of March, 1906, Welsh & Soest entered into a contract with the said McCaul Company to furnish the ornamental and light ironwork of said building for the sum of $23,000, this being the same work and material which was the subject of the contract of January 23, 1906, between the defendant and Welsh & Soest.

On the 28th of March, 1906, the said Welsh & Soest notified the defendants to proceed at once with the performance of the said contract of January 23, 1906, but the defendant refused to proceed and shortly thereafter notified Welsh & Soest that they would not furnish the said ironwork.

By reason of this failure and refusal by the defendant to furnish the ironwork specified Welsh & Soest were unable to fulfill their contract with the McCaul Company and they were notified by the McCaul Company that unless they proceeded with their contract, a contract for such ironwork would be let to other

parties and it would hold Welsh & Soest responsible for any necessary excess in cost above the contract price with them; and thereafter, the McCaul Company did let the contract for this ironwork to the Hecla Iron Works, of Brooklyn, New York, for the sum of $28,500. The McCaul Company made its claim against the estate of Welsh & Soest in bankruptcy for the sum of $5,500, being the difference between the price which the McCaul Company was to have paid Welsh & Soest and the price which they paid the Hecla Iron Works for the same work and material. This claim was duly allowed against the estate of Welsh & Soest, and because of the facts hereinbefore briefly set forth, the plaintiff says he is entitled to recover, first, $3,450, being the difference between the contract price with the defendant and their contract price with the said McCaul Company; and also the sum of $5,500, being the amount which the McCaul Company was entitled to and had allowed out of the estate of Welsh & Soest, as the difference between the $23,000 which the McCaul Company was to pay to Welsh & Soest and the $28,500 which the McCaul Company had to pay to the Hecla Iron Works.

The defendant in its original answer admitted the making of the contract between it and Welsh & Soest, and the making of the contract between Welsh & Soest and Gilpin; it admits that Gilpin was obliged to give up the contract, which had to be done on account of his insolvency; it admits that the contract which had originally been given to Gilpin was afterwards given to the McCaul Company and that Welsh & Soest on the 28th of March, 1906, made the contract with the McCaul Company as alleged in the petition. For want of knowledge, it denies that the McCaul Company notified Welsh & Soest that because of their failure to proceed with the furnishing of the ironwork it would let same to either parties, and for the same reason it denies that the McCaul Company did let the work to the Hecla Iron Works Company and also for the same reason denies that the McCaul Company did let the work to the Helca Iron Works Company, and also for the same reason denies the presentation of the allowance of the claim of $5,500 of the McCaul Company against the estate of Welsh & Soest, and then denies generally any liability on its part to the plaintiff.

The defendant filed later an amendment to this answer in which it sets up another defense, which, so far as is deemed necessary, will be considered later on in this opinion.

Upon the trial, at the close of the evidence offered on the part of the plaintiff the court, on motion of the defendant, directed the jury to return a verdict in its favor, which was accordingly done, and judgment entered on said verdict. What is here sought is a reversal of that judgment.

It will be noticed that there is no allegation in the petition as to the amount which was to be paid by Gilpin to Welsh & Soest, nor is there any allegation that the defendant had any information as to the amount to be paid to Welsh & Soest by the McCaul Company, nor are there allegations that the material and labor to be furnished by Welsh & Soest, or obtained by them from other parties at a price not higher than that which was to be paid to the defendant, nor is there any allegation that the defendant agreed to furnish this ironwork after Welsh & Soest made their contract with the McCaul Company.

When the defendant made its contract with Welsh & Soest it, of course, was bound to have in mind that if it defaulted in its contract, Welsh & Soest would be damaged to the amount that would be required to expend in furnishing this ironwork either by letting the contract to another party or doing the work themselves, but it could not have had in contemplation any profits which Welsh & Soest would make by thereafter making a contract with the McCaul Company, or anybody else, to furnish this ironwork at a particular price; nor could it have had in contemplation what such other party would be obliged to pay somebody else to complete the work. The measure of damages, therefore, claimed by the plaintiff in each instance, that is, for the profit of $3,550 which it would have made had the defendant furnished the ironwork and McCaul would have paid them for, and the other item of $5,500 which the McCaul Company paid to the Hecla Iron Works Company, and a claim for which it had allowed against the estate of the bankrupts, would not be the true measure of damages in any event.

And again, so far as appears from the petition, the defendant made no agreement with Welsh & Soest to furnish anything to them after it received notice from them that by reason of the financial condition of Gilpin work must be suspended upon the contract.  Letters were introduced in evidence, one from Welsh & Soest to the defendant, to the effect that work must be suspended upon the contract.  To this an answer was made by letter from the defendant to Welsh & Soest, that letter being in evidence, in which the defendant notified them that it would be a loss to them to have the work suspended.

Without considering in detail the various errors complained of in this proceeding, we are of the opinion that with the most liberal construction that can be given to the petition, no special damages such as are prayed for could have been awarded and that since no other damages were claimed, the most that could have been recovered would have been nominal damages. We are further of the opinion that from the evidence of the two letters referred to and from the allegations of the petition, it is not made to appear that the defendant was bound to furnish the ironwork after it received the notice to discontinue the work until further orders.

We reach the conclusion, therefore, that the action of the court of common pleas was right, and the judgment is affirmed.